**No. 21-1542**

# United States Court of Appeals for the Federal Circuit

SAS INSTITUTE INC.,
*Plaintiff - Appellant*

v.

WORLD PROGRAMMING LIMITED,
*Defendant - Appellee*

On Appeal from the United States District Court for the Eastern District of Texas
Case No. 18-cv-00295
J. Rodney Gilstrap, Chief Judge

**BRIEF OF *AMICI CURIAE* SCHOLARS OF COPYRIGHT LAW IN
SUPPORT OF PLAINTIFF-APPELLANTS
AND REVERSAL**

Robert W. Clarida
Reitler Kailas & Rosenblatt LLC
885 Third Ave., 20th Floor
New York, NY 10022
(212) 209-3044
rclarida@reitlerlaw.com

*Counsel for Amici Curiae*

**FORM 9. Certificate of Interest**                                    **Form 9 (p. 1)**
                                                                        **July 2020**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF INTEREST</u>

| | |
|---|---|
| **Case Number** | 21-1542 |
| **Short Case Caption** | SAS Institute Inc. v. World Programming Limited |
| **Filing Party/Entity** | Scholars of Copyright Law |

**Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 05/21/2021

Signature:  /s/ Robert W. Clarida

Name:  Robert W. Clarida

**FORM 9. Certificate of Interest**                                         Form 9 (p. 2)
                                                                                July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Sandra Aistars | | |
| Jon Garon | | |
| Hugh Hansen | | |
| J. Devlin Hartline | | |
| S. Todd Herreman | | |
| Loren Mulraine | | |
| Christopher Newman | | |
| Eric Priest | | |
| Mark F. Schultz | | |
| Steven Tepp | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐     None/Not Applicable          ☐     Additional pages attached

| Robert W. Clarida | 885 Third Ave., 20th Floor New York, NY 10022 | (212) 209-3044 rclarida@reitlerlaw.com |
|---|---|---|
| Reitler Kailas & Rosenblatt LLC | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑     None/Not Applicable          ☐     Additional pages attached

| | | |
|---|---|---|
| | | |

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ..............................................................................i

TABLE OF AUTHORITIES ................................................................................v

INTEREST OF THE *AMICI CURIAE* .................................................................1

SUMMARY OF ARGUMENT ............................................................................4

ARGUMENT ....................................................................................................6

I.    THE COURT FAILED TO APPLY THE STATUTORY PRESUMPTION OF COPYRIGHT VALIDITY UNDER SECTION 410(C) ..........................................................................................6

II.   THE COURT MISAPPLIED THE ABSTRACTION-FILTRATION-COMPARISON ANALYSIS ........................................................16

III.  THE COURT FAILED TO SET FORTH ITS REASONING IN SUFFICIENT DETAIL TO PERMIT MEANINGFUL APPELLATE REVIEW ..........................................................................................21

CONCLUSION ..............................................................................................25

CERTIFICATE OF COMPLIANCE .................................................................27

# TABLE OF AUTHORITIES

## CASES

*Affiliated Music Publishers, Inc. v. Ashley Publications, Inc.*,
   197 F.Supp. 17 (S.D.N.Y.1961) ........................................................................13

*Am. Ctr. for Civil Justice v. Katchen*,
   No. 19-18115 (FLW), 2020 U.S. Dist. LEXIS 126755
   (D.N.J. July 20, 2020)..................................................................................24, 25

*Apple Barrel Prodns, Inc. v. Beard*,
   730 F.2d 384 (5th Cir. 1984) ..................................... 11, 12, 13, 14, 15

*Baldwin Cooke Company v. Keith Clark, Inc.*,
   383 F.Supp. 650 (N.D.Ill.1974), *aff'd*, 505 F.2d 1250 (7th Cir.1974)................13

*Batiste v. Najm*,
   28 F. Supp. 3d (E.D. La. 2014)..........................................................................18

*Bus. Mgmt. Int'l v. Labyrinth Bus. Sols., LLC*,
   2009 U.S. Dist. LEXIS 24900 (S.D.N.Y. Mar. 24, 2009)..................................10

*Compulife Software, Inc. v. Newman*,
   959 F.3d 1280 (11th Cir. 2020) ....................................................9, 18, 19, 20, 21

*Engineering Dynamics and Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   982 F.2d 693 (2d Cir. 1992) .......................................................................16, 17

*Eng'g Dynamics, Inc. v. Structural Software, Inc.*,
   26 F.3d 1335 (5th Cir. 1994) ............................................................................16

*eScholar, LLC v. Otis Educ. Sys.*,
   2005 U.S. Dist. LEXIS 40727 (S.D.N.Y. Nov. 3, 2005)........................10, 23, 24

*Feist v. Rural Tel. Serv. Co.*,
   111 S. Ct. 1282 (1991)......................................................................................14

*Gates Rubber v. Bando Chem. Indus.*,
   9 F.3d 823 (10th Cir. 1993) ..............................................................................16

*Gen. Universal Sys., Inc. v. Lee*,
  379 F.3d 131 (5th Cir. 2004) ..................................................................6

*Gnu Business Inf. Systs, Inc. v. The Social Secretary, Inc.*,
  1993 WL 469919 (N.D. Ill. 1993) ........................................................14

*In re Gioioso*,
  979 F.2d 956 (3d Cir. 1992) .................................................................25

*In re Ross*,
  858 F.3d 779 (3d Cir. 2017) .................................................................24

*Interplan Architects, Inc. v. C.L. Thomas, Inc.*,
  2010 WL 4366990 (S.D. Tex. Oct. 27, 2010) ......................................13

*Jacobsen v. Katzer*,
  535 F.3d 1373 (Fed. Cir. 2008) ...........................................................17

*Jane Envy, LLC v. Infinite Classic Inc.*,
  No. SA:14-CV-065-DAE, 2016 U.S. Dist. LEXIS 23621
  (W.D. Tex. Feb. 26, 2016) ...............................................................22, 23

*Murata Mach. USA v. Daifuku Co.*,
  830 F.3d 1357 (Fed. Cir. 2016) ...........................................................24

*National Association of Broadcasters v. Copyright Royalty Tribunal*,
  675 F.2d 367 (D.C.Cir.1982) ...............................................................13

*Norma Ribbon & Trimming, Inc. v. Little*,
  51 F.3d 45 (5th Cir. 1995) .....................................................................6

*R. Ready Prods., Inc. v. Cantrell*,
  85 F. Supp. 2d 672 (S.D. Tex. 2000) ...................................................23

*Roy Export Company Establishment of Vaduz, Liechtenstein v. Columbia
  Broadcasting System*, 672 F.2d 1095 (2d Cir.), *cert. denied*, 459 U.S. 826,
  103 S.Ct. 60, 74 L.Ed.2d 63 (1982) .....................................................13

vi

*United States v. Menza*,
   137 F.3d 533 (7th Cir. 1998) ..............................................................24

**STATUTES**

17 U.S.C. § 410(c) ........................................................ *passim*

Copyrights, §55, 60 Pub. L. 349, 35 Stat. 1075 (Mar. 4, 1909; *repealed* 1978).......6

**OTHER AUTHORITIES**

Sandra Aistars et al., *Copyright Principles and Priorities to Foster a Creative Digital Marketplace*, 23 GEO. MASON L. REV. 769 (2016) ...................................2

AM. INTELL. PROPERTY L. ASS'N, L. PRAC. MGMT. COMM., 2019 REPORT OF THE ECONOMIC SURVEY (2019)..............................................................7

Fed. R. Civ. Pro 52(a)(1), Advisory Committee Notes (1946 amendment)............22

H. Rep. 94-1476 (94th Cong. 2d Sess. 1976) ....................................................7, 15

Sunil Iyengar & Bonnie Nichols, *Taking Note: Monitoring the Role of Freelancers and Small Businesses in the Arts Economy—and Early Signs of COVID-19 Impact*, NEA (May 7, 2020), https://www.arts.gov/stories/blog/2020/taking-note-monitoring-role-freelancers-and-small-businesses-arts-economy-and-early-signs-covid-19 .........3

Russ Krajec, *Current Patent Litigation Costs Are Between $2.3 to $4M*, ASSOCIATED PRESS, Jul. 10, 2020 ........................................................8

Sean Pager, *Making Copyright Work for Creative Upstarts*, 22 GEO. MASON L. REV. 1021 (2015) ............................................................2, 3

U.S. Copyright Office, *Circular 1: Copyright Basics* (Mar. 2021).........................7

U.S. COPYRIGHT OFFICE, *Copyright Small Claims* (2013) .....................................2

*World IP Day 2021*, WIPO MAGAZINE (Mar. 2021), https://www.wipo.int/wipo_magazine/en/2021/01/article_0000.html ..............2, 3

*World Intellectual Property Day 2021-"IP and SMEs: Taking Your Ideas to Market"*, WIPO (Apr. 22, 2021) https://www.wipo.int/pressroom/en/articles/2021/article_0004.html#_ftn1 ......... 2

Douglas Y'Barbo, *On Section 411 of the Copyright Code and Determining the Proper Scope of a Copyright Registration*, 34 SAN DIEGO L. REV. 343 (1997) ................................................................................................................. 6

## INTEREST OF THE *AMICI CURIAE*[1]

The amici are professors and scholars of copyright law ("Copyright Scholars").

The Copyright Scholars teach and research copyright law and other related areas of

the law and/or have served in positions of authority with respect to the

development and administration of copyright law in the United States. The

Scholars have no stake in the outcome of this case other than their interest in

ensuring that copyright law develops in a manner that respects its Constitutional

and statutory basis and ensures that creativity and innovation continue to flourish.

This brief was researched and written with the assistance of the Arts and

Entertainment Advocacy Clinic at George Mason University's Antonin Scalia Law

School.  The clinic provides pro bono counseling on copyright matters to

individuals and small businesses in the creative sector who would otherwise lack

access to legal advice.  The clinic and its Director are particularly interested in the

impact this litigation will have on small and medium enterprises in the arts.

Small and Medium Enterprises ("SMEs") account for 90% of companies

world-wide and 70% of global employment.[2]  Honored on "World IP Day" by the

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(D), counsel for *amici curiae* states that no counsel for a party authored this brief in whole or in part.  No counsel or party made a monetary contribution intended to fund the preparation of this brief, and no person other than *amicus* or its counsel made such a contribution.  Pursuant to Federal Rule of Appellate Procedure 29(a), the parties have consented to the filing of this brief.

World Intellectual Property Organization in 2021 as "the unsung heroes of the global economy and an engine for growth in a post-pandemic world,"[3] SMEs nevertheless are challenged by the high costs of exploiting and enforcing their intellectual property rights.[4]  Unlike large corporations with robust legal departments and multi-billion dollar industries with previously established reciprocal licensing channels,[5] SMEs are systemically disadvantaged, for instance, by their minimal revenue to pay costly litigation fees and by the lack of available resources to oversee their exclusive rights.[6]  SMEs are the Jack and Jills of all trades—taking responsibility for both creative endeavors and business ventures, while simultaneously staying up-to-date with modern technologies and constantly adapting to market trends and techniques.[7]  If the practical ability to protect ownership in creative works is reserved for large corporate entities who must appeal to a mass audience, then much creativity is at risk of being silenced.

---

[2] *See World IP Day 2021*, WIPO MAGAZINE (Mar. 2021), https://www.wipo.int/wipo_magazine/en/2021/01/article_0000.html (last visited May 12, 2021).

[3] *World Intellectual Property Day 2021-"IP and SMEs: Taking Your Ideas to Market"*, WIPO (Apr. 22, 2021) https://www.wipo.int/pressroom/en/articles/2021/article_0004.html#_ftn1 (quoting WIPO Director General Daren Tang World IP Day speech).

[4] *See* U.S. COPYRIGHT OFFICE, *Copyright Small Claims*, 24-26 (2013).

[5] *See generally* Sean Pager, *Making Copyright Work for Creative Upstarts*, 22 GEO. MASON L. REV. 1021, 1030 (2015).

[6] *See id* at 1033, e.g., Sandra Aistars et al., *Copyright Principles and Priorities to Foster a Creative Digital Marketplace*, 23 GEO. MASON L. REV. 769, 787-88 (2016).

[7] *See* Pager, *supra* note 4 at 1036.

Yet, in spite of these obstacles, SMEs make contributions to diversity and inclusion, innovation, and societal edification that are at the very heart of promoting the progress of the arts and uplifting humanity as a whole.[8]  In the arts sector, independent artists and small businesses are the backbone for the free exchange of ideas upon which American culture relies.[9]  Over a third of all independent artists are self-employed and many artistic industries are dominated by small businesses, most often employing fewer than 20 employees.  In recent years, just 12 artistic industries contributed a combined total of $575 billion to the nation's GDP.  According to the NEA, "nearly 20 percent ($109 billion) of this amount came from self-employed workers and small businesses alone."[10]

In addition to these contributions, individuals and small businesses are also uniquely suited to have a positive and direct impact on their communities because of their local connections.  SMEs in the arts play vital individual roles in their communities: they teach art in schools, at youth programs, and to the elderly.  They help make communities beautiful in tangible ways: contributing to sculpture

---

[8] *See generally id*. at 1034-35.

[9] *See World IP Day 2021*, WIPO MAGAZINE (Mar. 2021), https://www.wipo.int/wipo_magazine/en/2021/01/article_0000.html (last visited May 12, 2021).

[10] Sunil Iyengar & Bonnie Nichols, *Taking Note: Monitoring the Role of Freelancers and Small Businesses in the Arts Economy—and Early Signs of COVID-19 Impact*, NEA (May 7, 2020), https://www.arts.gov/stories/blog/2020/taking-note-monitoring-role-freelancers-and-small-businesses-arts-economy-and-early-signs-covid-19.

gardens, street art, local galleries, and shops.  Among other benefits, the relationship between local artists and small businesses allows for the preservation of regional culture that might not have widespread appeal in the general public, but still preserves the valuable cultural heritage of a particular locale.

Ensuring the independent artist and small business community has a realistic method for protecting creative work nurtures creativity and well-being in individual local communities around the country, and encourages cultural innovation and individual and economic flourishing on a national scale.  Placing additional burdens on individuals and small businesses to defend their exclusive rights on top of the obligations already confounding them under current copyright law could threaten the economic and cultural livelihoods of our global, national and local communities in a way that harms the progress copyright law is designed to protect.

## SUMMARY OF ARGUMENT

The judgment of the Court below should be reversed.  The Court's holding that Plaintiff's works are effectively uncopyrightable in their entirety was reached through a flawed examination, in the context of a novel proceeding, that is inconsistent with both the Copyright Act and applicable case law.  If sustained, this approach would significantly undermine Congressional intent of promoting and

rewarding copyright registration, and set the bar of establishing copyrightability so high that it would prejudice copyright owners not merely in the software sector, but across the full spectrum of creative works.

The "Copyrightability Hearing" the court convened is foreign to copyright law and threatens to impose additional costs and burdens on parties, moving the costs of vindicating their rights further out of reach for many creators and copyright owners. The District Court accepted Defendant's recitation of a litany of copyright doctrines, with little or no analysis, as sufficient to rebut copyrightability not merely in particular elements of Plaintiff's works, but the works in their entirety. That court improperly failed to recognize that works may retain copyrightability even when certain elements of those works are not protectable, failing to apply the statutory presumption first enacted by Congress over a century ago. The District Court compounded that error by misapplying the case law on which it purported to rely, improperly requiring Plaintiff to re-prove the copyrightability of its works and truncating the analysis called for by case law when it was dissatisfied with the Plaintiff's efforts. Finally, the District Court failed to provide the analysis and specificity necessary for Plaintiff, other copyright owners, and this Court to understand and evaluate its decision. For all these reasons, the decision of the District Court should be reversed.

5

## ARGUMENT

A proper application of the Copyright Act, consistent with the rulings of the Fifth Circuit, this Court, and the courts in prior copyright disputes under the Act, requires reversal of the decision below.

### I.    THE COURT FAILED TO APPLY THE STATUTORY PRESUMPTION OF COPYRIGHT VALIDITY UNDER SECTION 410(C)

The presumption of validity accompanying copyright registration, which has been in effect since the 1909 Copyright Act,[11] serves the dual purposes of incentivizing copyright registration[12] and preventing inefficiency during trial.[13] Under Section 410(c) of the current  Act, a timely certificate of copyright registration gives rise to a rebuttable presumption of copyright validity in the registered work by the claimant: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c); *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Norma Ribbon & Trimming, Inc. v. Little*, 51 F.3d 45, 47 (5th Cir. 1995).

---

[11] Copyrights, §55, 60 Pub. L. 349, 35 Stat. 1075 (Mar. 4, 1909; *repealed* 1978).

[12] 17 U.S.C. § 410(c).

[13] Douglas Y'Barbo, *On Section 411 of the Copyright Code and Determining the Proper Scope of a Copyright Registration*, 34 SAN DIEGO L. REV. 343, 376 (1997) ("[T]he rational basis for the presumption is that the court need not do what the Copyright Office has already done.").

6

Congress intended the Section 410 (c) presumption as an incentive to registration.   As the enacting Congress recognized, "[t]he plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline [sic] the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." H. Rep. 94-1476, at 157 (94th Cong. 2d Sess. 1976).

This presumption is of vital importance to copyright owners, and is frequently cited as an inducement to register works although copyright protection attaches automatically upon fixation.  U.S. Copyright Office, *Circular 1: Copyright Basics* at 5 (Mar. 2021).  The presumption is particularly important to individual authors and small entities who struggle to afford the costs of federal litigation to adjudicate copyright claims.  Imposing the costs of a Markman-like evidentiary showing of originality in every litigation would effectively render even their timely-registered works judicially unenforceable.[14]

---

[14] AM. INTELL. PROPERTY L. ASS'N, L. PRAC. MGMT. COMM., 2019 REPORT OF THE ECONOMIC SURVEY, 50, 54 (2019). According to the AIPLA's 2019 report, patent suits with less than $1 million at risk cost $250,000 including discovery, motions, and claim construction, while copyright suits cost only $150,000 on average prior to trial. In total, including appeals if applicable, copyright suits with less than $1 million at risk cost $550,000 on average, as compared to $700,000 on average for patent suits. *Id.* Claim construction is an expensive aspect of this process.  As of 2020, "the claim construction portion of a patent litigation ranges from $250,000 for less than $1M at risk to $2.375M for cases where $25M or more is at risk." For cases with "less than $1M at risk, the trial will cost $700,000, while the

In the instant case, Plaintiff's works were timely registered in the Copyright Office. Although the Court below claimed to give Plaintiff the benefit of the statutory presumption, on cross-motions for summary judgment, it nevertheless held a novel proceeding it termed a "Copyrightability Hearing" where it purported to examine the copyrightability of Plaintiff's work. In the course of this hearing Defendant's expert witness alleged a series of abstract legal doctrines to dispute the protectability of certain elements of Plaintiff's copyrighted works.  Appx16.[15] This recitation of doctrines, which the Court below called "species of unprotectability," is referred to in this brief as the "List".

The Court seemed to be on the right track when it acknowledged "copyrightable works may contain both protectible and unprotectible elements." Appx5. But instead of requiring Defendant to "effectively challenge" protectability as Congress intended, the Court committed reversible error for two reasons: first, because it effectively deemed Defendant's generic allegations (contained in the

---

very high value cases will cost $4M or more." Russ Krajec, *Current Patent Litigation Costs Are Between $2.3 to $4M*, ASSOCIATED PRESS, Jul. 10, 2020.

[15] Specifically, the Defendant alleged: some of the Plaintiff's material was in the public domain; because the SAS Language was "open and free for public use"; because Plaintiff's work contained "unprotectable open source elements," "factual and data elements," "elements not original to [Plaintiff]," "mathematical and statistical elements," "process, system, and method elements," "well-known and conventional display elements, such as tables, graphs, plots, fonts, colors, and lines," "material for which [Plaintiff] is not the author," "merged elements," "statistical analysis," "*scènes à faire* elements," and "short phrase elements." Appx16.

8

List) sufficient to disprove copyrightability with regard to the *entirety* of the works, not merely the various elements of the works Defendant had targeted; and second (discussed in Part II, *infra*) because it then demanded Plaintiff re-prove the copyrightability of its registered works. The core paragraph of the Opinion reads as follows:

> WPL therefore produced ample evidence that unprotectable elements exist within and as a part of the SAS System, identifying many "species of unprotectability" contained in the asserted works. Once a defendant establishes that at least some of the material is not entitled to protection, the burden shifts back to the plaintiff to "face[ ] the manageable task of responding to the appropriately narrowed issue" and combat the allegations. This may occur either by showing what defendant alleges as not protectable actually is entitled to protection, or by coming back and showing that there are remaining and identifiable protectable elements that defendant copied.

Appx16-17, quoting *Compulife Software, Inc. v. Newman*, 959 F.3d 1280, 1306 (11th Cir. 2020).

The Court's error in this respect repeats itself as to all of the doctrines included in the List: "factual and data elements," "elements not original to [Plaintiff]," "mathematical and statistical elements," and so on. In the Court's erroneous view, the statutory presumption of copyright validity of the *entire work* is thus properly rebutted if defendant establishes that "at least some" of that work's elements are individually uncopyrightable. *Id.* This renders the statutory presumption a nullity and is therefore reversible error.

The Court's stated basis for rebutting the presumption of validity and holding the SAS copyrights invalid, *i.e.*, that "at least some of the material is not

9

entitled to protection," Appx17, is not only wrong, it is exactly the opposite of the correct standard. In *Bus. Mgmt. Int'l v. Labyrinth Bus. Sols., LLC*, 2009 U.S. Dist. LEXIS 24900 (S.D.N.Y. Mar. 24, 2009), for example, the Southern District of New York explained that the standard for overcoming the presumption of validity was not met where the Plaintiff "wrote at least some original code in developing customizations and modifications" for the new version of a computer program. That creation of "at least some" new code was sufficient to meet the bar for originality. *Id.* at \*28–31. Defendant's showing that "at least some" of SAS' code was not copyrightable is, therefore, *not* sufficient to show otherwise. See also *eScholar, LLC v. Otis Educ. Sys.*, 2005 U.S. Dist. LEXIS 40727 (S.D.N.Y. Nov. 3, 2005) (copyright in computer program held entitled to presumption of validity where at least some elements were original to plaintiff).

As the Court below expressly states, the Defendant here merely showed, to the Court's satisfaction, that "unprotectable elements *exist within and as a part of* the SAS System, identifying many 'species of unprotectability' *contained in* the asserted works." Appx14 (emphasis added). By stopping there, without ever making a finding that every element of the SAS works was unprotectable, the Court's holding of uncopyrightability as to the SAS works in their entireties is thus much broader than the factual findings and legal rationale offered by the Court itself can support. As such, that holding undermines the purpose of the 410(c)

presumption of validity and sets the evidentiary bar for defendants far lower than Congress intended.

The presumption under 410(c) is not that every element of a work is independently copyrightable in isolation, but that the *work*, as registered, is copyrightable.  As the House Report articulated the issue, "[t]he plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline [sic] *the validity of the copyright."* (Emphasis added).  The Defendant's burden is therefore to disprove the validity of the copyright, not merely to show that "at least some" of a work's elements are individually uncopyrightable, as the Court wrote, or that "unprotectable elements exist within and as a part of" the plaintiff's work.  Appx16.

It is a truism that the existence of uncopyrightable elements within a work does not preclude a valid copyright. If that were not so, every biography and other work of non-fiction would be denied copyright in its entirety as a consequence of the uncopyrightable facts contained therein.

This shifting of the burden back to Plaintiff SAS on the basis of the List was clearly erroneous under the law of the Fifth Circuit.  In *Apple Barrel Prodns, Inc. v. Beard,* 730 F.2d 384 (5th Cir. 1984), for example, a unanimous Fifth Circuit panel rejected a Texas district court's finding that the plaintiff's work – a television musical program called the "The Country Kids Show" – was not copyrightable. As

11

the Court below did here, the District Court in *Apple Barrel* had impermissibly

failed to analyze the plaintiff's work as a whole, or to make factual findings with

respect to it:

> Despite the fact that plaintiffs only alleged copyright protection over
> its show as a whole, the district court did not view the show as a
> separate entity. Instead, the court divided "The Country Kids Show"
> into three distinct areas—script, design, and format—and questioned
> whether those components were original and/or copyrightable. The
> court made fact findings, for example, that the dialogue was not the
> same as that used in defendants' show, the songs performed in
> plaintiffs' show were not original, and the design elements of the
> show (costumes, hay bales, American flags) were not copyrightable
> because they presented "nothing new". Once the court determined that
> the *components* of "The Country Kids Show" were not original
> creations of the plaintiffs, or copyrightable by the plaintiffs, *it
> concluded that the show itself could not be the subject of copyright
> protection, either*.

730 F.2d at 387 (emphasis added). [16]

The Court below made exactly this same error in the instant case: it

determined that specific components of the SAS works were not copyrightable,

and then made an unsupported logical leap – without benefit of analysis or factual

findings – to the conclusion that the works as a whole were unprotectable.

The Fifth Circuit in *Apple Barrel* explained that the fundamental flaw in

such reasoning is a failure to recognize all the protectable compilation or

---

[16] The *Apple Barrel* court ultimately affirmed the District Court's denial of a
preliminary injunction on other grounds.

12

collective-work authorship a work may embody, even if it is comprised entirely of

uncopyrightable components:

> Despite the fact that the songs and dances performed in "The Country Kids Show" were not original compositions, copyright protection was still possible with respect to the show itself. Plaintiffs' show could be found to be a "compilation," "a work formed by the collection and assembling of preexisting materials ... selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Copyright protection may extend to such a compilation, even if the material of which it is composed is not copyrightable itself or is already subject to a previous copyright. [footnote omitted].[17]
>
> . . . . Since the plaintiffs alleged copyright ownership with respect to the show as a whole, it was erroneous for the district court to base its decision as to the success of the infringement claim on the originality

---

[17] Citing *National Association of Broadcasters v. Copyright Royalty Tribunal,* 675 F.2d 367, 378 (D.C.Cir.1982) (selection and arrangement of various programs into "broadcast day" of television station constitutes copyrightable compilation that may be owned by station regardless of ownership of copyrights in individual programs); *Roy Export Company Establishment of Vaduz, Liechtenstein v. Columbia Broadcasting System,* 672 F.2d 1095, 1103 (2d Cir.), *cert. denied,* 459 U.S. 826, 103 S.Ct. 60, 74 L.Ed.2d 63 (1982) (film composed of excerpts from previously copyrighted Charlie Chaplin films was copyrightable itself as original creative endeavor); *Baldwin Cooke Company v. Keith Clark, Inc.,* 383 F.Supp. 650, 654 (N.D.Ill.1974), *aff'd,* 505 F.2d 1250 (7th Cir.1974) (per curiam) (Executive Planner, a combination calendar, appointment, diary and information book, was copyrightable even though component parts were within public domain and thus not individually copyrightable); *Affiliated Music Publishers, Inc. v. Ashley Publications, Inc.,* 197 F.Supp. 17, 18 (S.D.N.Y.1961) (piano book containing 142 musical selections concededly in public domain entitled to copyright protection since book as a whole was original work). *See also Interplan Architects, Inc. v. C.L. Thomas, Inc.,* 2010 WL 4366990 at *103-104 (S.D. Tex. Oct. 27, 2010)(defendant's summary judgment motion on copyrightability denied, where plaintiff's architectural plans could be protectable despite containing contributions authored by third parties).

13

or copyrightability of the individual elements of the show. *Instead, the court should have examined "The Country Kids Show" in its entirety, and made fact findings on the originality and copyrightability of the show as a package.*

730 F.2d at 387-388 (emphasis added)(footnote omitted).

The same rule is equally true of software.  For example, the Northern District of Illinois in *Gnu Business Inf. Systs, Inc. v. The Social Secretary, Inc.,* 1993 WL 469919 (N.D. Ill. 1993) recognized that under *Feist v. Rural Tel. Serv. Co.*, 111 S. Ct. 1282 (1991), it is not sufficient to attack the copyrightability of a computer program by finding that "most elements of the . . . program are unprotectable":

> The defendants' analytical dissection, though relevant to defining the scope of GNU's copyright, [footnote omitted], ignores that copyrighted works have a certain synergy in that the sum of their unprotected elements may be a protectible whole. *Brown Bag* [*Software v. Symantec Corp.,* 960 F.2d 1465, 1476 n. 4 (9th Cir. 1992)]; *Stillman v. Leo Burnett Co., Inc.,* 720 F.Supp. 1353, 1361 (N.D.Ill.1989). Each individual subroutine in the code, for instance, may be unprotectible in that it is the most efficient method for obtaining the result desired or it is in the public domain, but the arrangement of the subroutines in the program as a whole may be protectible. *Stillman,* 720 F.Supp. at 1361; *see Feist Publications,* 111 S.Ct. at 1296 (selection, coordination, or arrangement of uncopyrightable facts in an original way is entitled to copyright protection). Arguably then, GNU may have a copyright in the selection and arrangement of certain unprotected elements and the similar arrangement of similar subroutines in the [Defendant's] program may be found to infringe the copyright in the [Plaintiff's] program.

1993 WL 469919 at *2.

14

The Court therefore denied defendant's motion for summary judgment.

In the present case, the District Court neither examined the SAS works in their entireties nor made factual findings with respect to them generally, or with regard to the various elements of those works. In *Apple Barrel* the District Court did the work the *SAS* court did not, specifying which elements were unprotectable, but committed error as a matter of Fifth Circuit law by extrapolating those findings to disqualify the entire work from protection. Here, the *SAS* Court failed to provide specificity *and* improperly shifted the burden back to Plaintiff to re-prove the copyrightability of their works. As the enacting Congress wrote, defendant's burden is "to disprove the validity of the copyright," H. Rep. 94-1476, *supra*, not merely to show that "unprotectable elements exist within and as a part of" the plaintiff's work. Appx16.

## II.    THE COURT MISAPPLIED THE ABSTRACTION-FILTRATION-COMPARISON ANALYSIS

The District Court's erroneous copyrightability analysis not only derailed its application of the statutory presumption of validity, it also led to a flawed application of the abstraction-filtration-comparison ("A-F-C") analysis the Court purported to undertake.   In the Fifth Circuit, this test was first articulated in *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994). There, at 1342-43, the Fifth Circuit held that a lower court did not properly determine what parts of the plaintiff's program were protectable.  It described the proper analysis as follows:

> First, in order to provide a framework for analysis, we conclude that a court should dissect the program according to its varying levels of generality as provided in the abstractions test.  Second, poised with this framework, the court should examine each level of abstraction in order to filter out those elements of the program which are unprotectable. Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, *scenes a faire* material, and other unprotectable elements suggested by the particular facts of the program under examination. Third, the court should then compare the remaining protectable elements with the allegedly infringing program to determine whether the defendants have misappropriated substantial elements of the plaintiff's program.

*Id.* at 1342-43, citing *Gates Rubber v. Bando Chem. Indus.*, 9 F.3d 823, 834 (10th Cir. 1993).

The District Court in this case purported to apply the A-F-C methodology, specifically citing *Gates Rubber*, *Engineering Dynamics* and *Computer Assocs.*

16

*Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 706 (2d Cir. 1992). Appx6. The Court's application of the test, however, was inadequate and incorrect as a matter of law.

As a threshold matter, a number of the allegedly disqualifying characteristics of Plaintiff's works enumerated in the List do not provide a basis for finding copyright invalidity *per se*. A work can be "open and free for public use," for example, *e.g.*, a video posted to YouTube under a Creative Commons license, but such work does not thereby become uncopyrightable. Such free dissemination might support an argument for a defense of license or estoppel, depending on the circumstances, but it has nothing to do with determining copyrightability, which was the stated purpose of the Court's Copyrightability Hearing.

Likewise, it is well-settled that "open source elements" are subject to copyright protection despite being made available under open-source license terms, as this Court has recognized, see *Jacobsen v. Katzer,* 535 F.3d 1373 (Fed. Cir. 2008). *A fortiori,* a work that merely "contains" open source elements, as Plaintiff's works allegedly do here, is not in any way uncopyrightable merely by reason of incorporating such elements. Again, the Court's attack on the protectability of the SAS works is predicated on an alleged characteristic of the works that has nothing to do with copyrightability. Thus, by its own terms the District Court filtered out what should be presumed to be *copyrightable* elements of Plaintiff's works. This alone is reversable error.

17

In fact, the Court performed no comparison step at all, short-circuiting the A-F-C test into an A-F analysis, and deeming no comparison necessary because (in the Court's words) "unprotectable elements exist within and as a part of" the plaintiff's works. Appx16. However, because the District Court appears to have conducted no analysis at all of the copyrightability of SAS's programs, either on the basis of their individual elements or as a whole – and certainly made no findings of fact in this regard – it had no basis on which to filter out such authorship under the rubric of the A-F-C analysis.

It should be noted that other software decisions from the Fifth Circuit, at the district court level, have applied the A-F-C test to find infringement where defendant copied the selection and arrangement of plaintiff's program. *See, e.g., Batiste v. Najm*, 28 F. Supp. 3d 595, 609 (E.D. La. 2014). The Court here did not even entertain the question, simply because, in its view, some *other* elements of the SAS works were unprotectable.

A second material flaw in the Court's application of the A-F-C test was its unsound application of the Eleventh Circuit decision in *Compulife Software, Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020). Plaintiff in *Compulife* had spent extensive time researching and developing a computerized mechanism for calculating, organizing, and comparing life-insurance quotes. *Id.* at 1295. The

18

company alleged that a group of competitors hacked into its system, stole proprietary data, and reproduced the quotes as a separate service. *Id.* at 1298.

On the issue of copyright infringement, Compulife contended that the defendants copied literal elements (namely parameters and variables) from the HTML source code used to generate quotes. *Id.* at 1300. The District Court for the Southern District of Florida found that while Compulife had a valid copyright in the text of its HTML source code, the company did not meet its burden to prove that the defendants' copied code was substantially similar. *Id.* Compulife appealed to the Eleventh Circuit. *Id.* at 1300–01.

The SAS Court failed to apply the *Compulife* principles correctly. First, while the Court purported to follow *Compulife*, it failed to follow, or even consider, the underlying rationale of that decision. With regard to the parties' respective burdens under the A-F-C methodology, the *Compulife* court centered its analysis around principles of fairness and equity. *See Compulife*, 959 F.3d at 1305 ("[P]lacing the burden to prove protectability on the [sic] plaintiff would unfairly require him to prove a negative"); *id.* at 1306 ("Placing the burden on the defendant … [is] also fairer and more efficient").

In contrast, the *SAS* court required Plaintiff here to prove protectability, even as to aspects of authorship that Defendant had not shown to be uncopyrightable in the first instance. The SAS Court asserted that the *Compulife* approach to the A-F-

19

C test would leave to Plaintiff the "manageable task of responding to the appropriately narrowed issue." Appx14 (citing *Compulife*, 959 F.3d at 1306). In fact, however, the task forced on SAS was neither manageable nor "appropriately narrowed," because the District Court's tacit and unexplained filtration of protectable selection/arrangement authorship failed to consider all the copyrightable aspects of the SAS works.

Faced with the task of proving the negative, that SAS' works writ large are copyrightable, Plaintiff's expert logically asserted the creativity of the works – the threshold for copyrightability. But the Court rejected that rebuttal, concluding with little reasoning, "SAS has not shown the existence and extent of any remaining protectible work." Appx17. The result, shockingly and erroneously, was a finding that Plaintiff's registered works were uncopyrightable in their entireties.

That approach is in direct contradiction with the admonition in *Compulife*, "because the defendant bears the burden to demonstrate unprotectability, the mere failure of the plaintiff to present evidence of protectability—assuming that a valid copyright and factual copying have already been established—isn't a sufficient reason to give judgment to the defendant." *Compulife* at 1306. Instead, the District Court adopted a ping-pong approach, demanding the plaintiff re-prove the copyrightability of works that should have been presumed by virtue of § 410(c). The plaintiff's "manageable task" is not to re-prove the copyrightability of its

20

works, but to prove that the non-filtered, protected elements were copied by defendant. But precisely because the District Court cut the analysis short, it never reached the comparison stage to determine copying of protected elements. So, while the District Court here may have cited some of the language of *Compulife*, both the process and the result it reached are inconsistent with the fairness and equity principles in which the *Compulife* court explicitly grounded its decision.

The court's decision here put SAS at an exceptionally unfair disadvantage, because *all* of the SAS authorship was deemed unprotectable, but only *some* of its authorship was actually evaluated by the Court. If this decision were to be affirmed, future plaintiffs in the same position as SAS would also be faced with the virtually impossible task of proving a negative. As the Eleventh Circuit observed in *Compulife*, 959 F.3d at 1305, "[i]f the plaintiff had the burden of proving protectability, he would have to preemptively present evidence negating all possible theories of unprotectability just to survive a motion for summary judgment") (internal citation omitted).

### III.  THE COURT FAILED TO SET FORTH ITS REASONING IN SUFFICIENT DETAIL TO PERMIT MEANINGFUL APPELLATE REVIEW

As noted above, the Court in this case followed a novel procedure in deciding the parties' cross-motions for summary judgment. Rather than merely reviewing the expert reports and declarations in the record, the Court held what it

21

termed a Copyrightability Hearing at which it took extensive live testimony, effectively converting the copyrightability determination into a *de facto* bench trial. If it had been a *de jure* bench trial, Rule 52(a) would require the Court to "find the facts specially," and state its findings and conclusions on the record or set them forth in an opinion. The Advisory Committee Notes explain that the goal of FRCP 52(a)(1) is in part to aid the appellate court if such a proceeding is appealed. Fed. R. Civ. Pro 52(a)(1), Advisory Committee Notes (1946 amendment).

Here, however, the Court's Opinion is conspicuously thin on factual findings and legal reasoning on the central issue of copyrightability. In their place, the Court merely offers the List, Appx16, which contains (a) the names of various infringement defenses and legal doctrines that Defendant "pointed to" in connection with various components of Plaintiff's work, and (b) citations to the Copyrightability Hearing transcript. The items on the List are unaccompanied by any reasoning or factual findings whatsoever, and the Court is vague about which of them were shown by the evidence and which were merely "identified" in Defendant's "allegations." *Id.* Nowhere does the Court offer any support for its conclusory finding of uncopyrightability.

This is an aberration relative to the approach taken by other courts within the Fifth Circuit, which have consistently spelled out their copyrightability reasoning in detail, particularly when finding an author's work unprotectable. In *Jane Envy,*

*LLC v. Infinite Classic Inc.*, No. SA:14-CV-065-DAE, 2016 U.S. Dist. LEXIS 23621 (W.D. Tex. Feb. 26, 2016), for example, the Western District of Texas found that six pieces of jewelry were insufficiently original where the pieces consisted of basic elements in the public domain, primarily crosses, with minor modifications such as color and material changes.  In so doing, the court discussed each item of jewelry individually, explicitly breaking each piece down into elements. *Id.* at 23–35.  The Court here did nothing of the kind.  In *R. Ready Prods., Inc. v. Cantrell,* 85 F. Supp. 2d 672 (S.D. Tex. 2000), the Southern District of Texas set forth the detailed reasoning behind its finding that the plaintiff's work was unprotectable, compiling multiple charts, the first identifying each element of the plaintiff's work it deemed unoriginal and its reasoning for doing so, and a second comparing the elements of the plaintiff's work which were also present in prior works. *Id.* at 686-91.

Outside the Fifth Circuit, the courts are equally careful to articulate their reasoning when analyzing software copyrightability, as in *eScholar, LLC v. Otis Educ. Sys.,* 2005 U.S. Dist. LEXIS 40727 (S.D.N.Y. Nov. 3, 2005). There, the Southern District of New York recognized that the presumption of validity for a registered software copyright can be rebutted, but in so doing it considered the "total number of options" the plaintiff had in creating the work, "external factors that may limit the viability of some options and render others non-creative," and

23

whether "the selection criteria" that the program used were "garden variety." *Id.* at *44, *48–49. The court also asked whether the choices made by the creator "transcended the obvious." *Id.* at *50–51.  For all that the Opinion reveals here, the Court below did not consider such questions, seemingly convinced that Defendant discharged its burden merely by "pointing to" possible vulnerabilities of Plaintiff's registered copyrights.

Courts in other Circuits have also frequently held that a judge's failure to include sufficient analysis is grounds to discredit a court's ruling on appeal. The Seventh Circuit has concluded, for example, that where "the record does not sufficiently support [the district court's] conclusions" due to "inadequate explanation and insufficient reasoning," it is appropriate for the appellate court to request that the district court provide its reasoning, even where the district court was not required to do so by statute. *United States v. Menza*, 137 F.3d 533, 538 (7th Cir. 1998). Similarly, the Third Circuit recently noted that appellate courts grant less deference to trial court decisions that are unaccompanied by reasoning. *In re Ross*, 858 F.3d 779, 786 (3d Cir. 2017). *See also Murata Mach. USA v. Daifuku Co.,* 830 F.3d 1357, 1364 (Fed. Cir. 2016). Specifically, in reviewing findings for an abuse of discretion, a reviewing court has authority to vacate a decision of a lower court decision for a lack of sufficient reasoning. *Am. Ctr. for Civil Justice v. Katchen,* No. 19-18115 (FLW), 2020 U.S. Dist. LEXIS 126755, at

24

*9 (D.N.J. July 20, 2020), citing to *In re Gioioso*, 979 F.2d 956, 964 (3d Cir. 1992)(Roth, J., concurring). Here, where the review from the District Court's summary judgment decision is *de novo*, the reviewing court's authority to vacate a decision on these grounds is necessarily even greater. This Court should exercise that authority to reverse the decision below.

## CONCLUSION

The District Court's flawed legal analysis and procedural approach, if allowed to stand, would visit terrible injustice for SMEs, not only in the software industry but across all creative sectors that rely on effective copyright protection and enforcement. Based on the above reasons and authorities, *amici curiae* Copyright Scholars respectfully urge this Court to reverse the decision of the Court below in this action.

DATED:     May 21, 2021
New York, New York

Respectfully submitted,

*Counsel of Record*
/s/ Robert W. Clarida
Reitler Kailas & Rosenblatt LLC
885 Third Ave., 20th Floor
New York, NY 10022
(212) 209-3044
rclarida@reitlerlaw.com

Steven Tepp
President & CEO, Sentinel Worldwide
Professorial Lecturer in Law
George Washington University Law School

*Counsel for Amici Curiae*

25

*Of counsel*[18]:

Sandra Aistars
George Mason University Antonin
Scalia Law School
Clinical Professor; Founder and
Director, Arts and Entertainment
Advocacy Clinic

Jon Garon
Shepard Broad College of Law
Director of Intellectual Property,
Cybersecurity and Technology Law
Program and Professor of Law

Hugh Hansen
Fordham University School of Law
Professor of Law; Director, Fordham
Intellectual Property Law Institute

J. Devlin Hartline
George Mason University Antonin
Scalia Law School
Assistant Professor & Assistant
Director, Communications and
Publications, CPIP

S. Todd Herreman
Associate Professor of Teaching
Music Industry and Technology
Setnor School of Music
College of Visual and Performing Arts
Syracuse University
Co-Director of Audio Arts MA

Loren Mulraine
Belmont University – College of Law
Professor of Law; Director of Music and
Entertainment Law Studies

Christopher Newman
George Mason University Antonin
Scalia Law School
Associate Professor of Law

Eric Priest
University of Oregon School of Law
Associate Professor and Faculty
Director

Mark F. Schultz
Goodyear Tire & Rubber Company
Chair in Intellectual Property Law
Director, Intellectual Property and
Technology Law Program
University of Akron School of Law

---

[18] All scholars are signing in their personal capacities, institutional affiliations are provided for identification purposes only.

26

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(a)(5). The brief contains 6,087 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii) and Federal Circuit Rule 32(b).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated: May 21, 2021

/s/ Robert W. Clarida
Reitler Kailas & Rosenblatt LLC
885 Third Ave., 20th Floor
New York, NY 10022

*Counsel for Amici Curiae*

27