No. 21-1542

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

SAS INSTITUTE INC.,

*Plaintiff-Appellant,*

v.

WORLD PROGRAMMING LTD.,

*Defendant-Appellee.*

Appeal from the U.S. District Court for the Eastern District of Texas,
No. 2:18-CV-00295-JRG (Gilstrap, J.)

**BRIEF FOR THE COPYRIGHT ALLIANCE
AS *AMICUS CURIAE* IN SUPPORT OF APPELLANT**

Gianni P. Servodidio
Ethan C. Wong
JENNER & BLOCK LLP
919 Third Ave.
New York, NY 10022
Telephone: (212) 891-1600

Matthew S. Hellman
Noah B. Bokat-Lindell
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000

*Counsel for Amicus Curiae*

May 21, 2021

## CERTIFICATE OF INTEREST

Counsel for *amicus curiae* Copyright Alliance certifies:

1.     The full name of every party or amicus represented by me is:

Copyright Alliance.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

See above.

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the amicus curiae represented by me are:

Not applicable.

4.     The names of all law firms and the partners or associates that appeared for the amicus curiae now represented by me in the trial court or agency or are expected to appear in this court (and who have not or will not enter an appearance in this case) are:

Not applicable.

5.     The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal is:

Not applicable.

*/s/ Matthew S. Hellman*

Matthew S. Hellman

JENNER & BLOCK LLP

1099 New York Ave., NW, Suite 900

Washington, DC 20001

Telephone: (202) 639-6000

mhellman@jenner.com

*Counsel for Amicus Curiae*

i

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................i

TABLE OF AUTHORITIES........................................................................ iii

TABLE OF ABBREVIATIONS..................................................................... vi

INTEREST OF *AMICUS CURIAE*...................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT...............................2

ARGUMENT.................................................................................................4

I.    Congress Sought To Incentivize The Creation And Registration Of Expressive Works. .........................................................4

II.   It Is Well-Established That Software Consists Of Protectable Expressive Elements.................................................................................8

III.  The Court Below Improperly Shifted The Burden Of Establishing Protectability To The Registered Copyright Holder. ..................................................................................................10

    A.    The Proper Burden-Shifting Framework Places the Burden of Establishing Non-Protected Elements of a Copyrighted Work on the Defendant...........................................11

    B.    The District Court's Improper Burden-Shifting.........................16

CONCLUSION ..........................................................................................20

# TABLE OF AUTHORITIES

### CASES

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015)..............................5

*Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786 (2011)....................8

*Compulife Software Inc. v. Newman*, 959 F.3d 1288 (11th Cir. 2020) ...........................................................................12, 13, 14, 15, 18

*Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693 (2d Cir. 1992)...............................................................................9

*Creative Technology, Ltd. v. Aztech System Pte., Ltd.*, 61 F.3d 696 (9th Cir. 1995) ......................................................................6

*Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equipment Ltd.*, 716 F. App'x 5 (2d Cir. 2017) ...............................9

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) .........................................................5, 6

*Engenium Solutions, Inc. v. Symphonic Technologies, Inc.*, 924 F. Supp. 2d 757 (S.D. Tex. 2013) ...................................................13

*Engineering Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335 (5th Cir. 1994), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995) ........................................9, 12, 18

*eScholar, LLC v. Otis Educational Systems, Inc.*, No. 04 Civ. 4051, 2005 WL 2977569 (S.D.N.Y. Nov. 3, 2005) ........................................19

*Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763 (9th Cir. 2003).........................16

*Feist Publications, Inc. v. Rural Telephone Service Co.*, 499 U.S. 340 (1991)..............................................................................8

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) .....................................13

*Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338 (11th Cir. 2017), *aff'd*, 139 S. Ct. 881 (2019) ...............................15

iii

*General Universal Systems, Inc. v. Lee*, 379 F.3d 131 (5th Cir. 2004) ................................................................................10, 12

*GlobeRanger Corp. v. Software AG*, 691 F.3d 702 (5th Cir. 2012).................10

*Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183 (2021) ........................10

*Harper & Row Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539 (1985) ...............................................................................5, 6

*Innovation Ventures, LLC v. Ultimate One Distributing Corp.*, 176 F. Supp. 3d 137 (E.D.N.Y. 2016)..............................................16

*M-I L.L.C. v. Q'Max Solutions, Inc.*, No. CV H-18-1099, 2020 WL 4549210 (S.D. Tex. Aug. 6, 2020)................................................19

*Macro Niche Software, Inc. v. 4 Imaging Solutions, L.L.C.*, No. CV H-12-2293, 2013 WL 12140417 (S.D. Tex. Dec. 18, 2013) ...................19

*Marya v. Warner/Chappell Music, Inc.*, 131 F. Supp. 3d 975 (C.D. Cal. 2015)..................................................................13

*MGE UPS Systems, Inc. v. Power Maintenance International Inc.*, No. 4:04-CV-929-Y, 2007 WL 9711471 (N.D. Tex. Mar. 26, 2007) .................................................................................19

*Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366 (10th Cir. 1997) ................................18

*Oracle America, Inc. v. Google Inc.*, 750 F.3d 1339 (Fed. Cir. 2014) .............................................................................. 9-10

*R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262 (6th Cir. 2010) ...............................................................................19

*SAS Institute Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019 (E.D. Tex. 2020), *appeal docketed*, No. 21-1542 (Fed. Cir. Jan. 13, 2021) ...............................................................16, 17, 19

*Tavory v. NTP, Inc.*, 495 F. Supp. 2d 531 (E.D. Va. 2007), *aff'd*, 297 F. App'x 976 (Fed. Cir. 2008) ...............................................7

*TCA Television Corp. v. McCollum*, 839 F.3d 168 (2d Cir. 2016) ...................4

iv

*Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151 (1975) ......................2

*Universal Instruments Corp. v. Micro Systems Engineering, Inc.*, 924 F.3d 32 (2d Cir. 2019)...................................................................9

CONSTITUTIONAL PROVISIONS AND STATUTES

U.S. Const. art. I, § 8, cl. 8 .........................................................................4

Act of Dec. 12, 1980, Pub. L. No. 96-517, § 10, 94 Stat. 3015, 3028 (codified at 17 U.S.C. § 101).......................................................................8

17 U.S.C. § 102 ...........................................................................................6

17 U.S.C. § 408 ...........................................................................................6

17 U.S.C. § 410(c) .......................................................................................6

17 U.S.C. § 411(a) .......................................................................................6

17 U.S.C. § 412 ...........................................................................................6

OTHER AUTHORITIES

Bruce Keller & Jeffrey Cunar, *Copyright Law: A Practitioner's Guide* § 5:3 (Keith Voelker, 2d ed. 2017) .........................................7

William M. Landes & Richard A. Posner, *The Economic Structure of Intellectual Property Law* (2003) ...............................5

3 *Nimmer on Copyright* § 12.11...............................................................16

3 *Nimmer on Copyright* § 12.12[B] .........................................................18

3 *Patry on Copyright* § 8:3........................................................................5

Petition for Certiorari, *Google LLC v. Oracle America, Inc.*, 141 S. Ct. 1183 (2021), 2019 WL 338902...............................................10

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| AFC | Abstraction-filtration-comparison |
| SAS | SAS Institute, Inc. |
| World Programming | World Programming, Limited |

## INTEREST OF *AMICUS CURIAE*[1]

The Copyright Alliance is a nonprofit, non-partisan public interest and educational organization representing the copyright interests of over 1.8 million individual creators and over 13,000 organizations in the United States, across the spectrum of copyright disciplines. The Copyright Alliance is dedicated to advocating policies that promote and preserve the value of copyright, and to protecting the rights of creators and innovators.

*Amicus* and its members have a significant interest in the issues raised in this appeal. Like all copyrighted works that are timely registered with the U.S. Copyright Office, registered copyrights of software are entitled to a presumption of validity. In the decision below, the district court undermined that presumption. In particular, the "Copyrightability Hearing" conducted by the district court wrongly left the burden of establishing protectability on the copyright holder. The Copyright Alliance submits this brief to provide the Court with a proper statement of the relevant copyright principles— particularly as they apply to the ever-growing field of copyrighted

---

[1] No counsel for any party authored this brief in any part. No party, counsel, or person other than *Amicus*, its members, and its counsel contributed money to fund the preparation and submission of this brief. All parties consent to the filing of this brief. *See* Fed. R. App. P. 29(a)(4)(E).

software—and to urge the Court not to affirm the procedures employed below.

## INTRODUCTION AND SUMMARY OF ARGUMENT

Copyright law seeks to "secure a fair return for an 'author's' creative labor," and, "by this incentive, to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 156 (1975). Copyright protection reflects the judgment that the public benefits when creators have the financial stability needed to innovate and create. Copyright law also reflects Congress's further policy judgment that the public benefits when authors *register* their copyrights with the U.S. Copyright Office. To incentivize registration, Congress has provided, among other benefits, that copyrights that are timely registered are entitled to a presumption of validity in infringement litigation.

In the decision below, the district court failed to accord the protection to a registered work that copyright law requires. In the "Copyrightability Hearing" employed by the district court, the court improperly shifted the burden to the copyright holder to prove that its registered copyright contained protected elements rather than requiring the defendant to prove that those elements were unprotected. The Copyright Alliance submits this

2

brief to emphasize the importance of respecting Congress's decision to place the burden of challenging protectability on the defendant infringer rather than the plaintiff author.

Part I of this brief provides a brief overview of the protections that Congress chose to make available to authors, and in particular authors who register their copyrights.

Part II shows that, for 40 years, courts have consistently recognized that software is protected expression, and in particular that software elements like organization and structure are protectable.

Part III explains how the procedures employed by the district court in this case were inconsistent with the copyright regime that Congress created. Appellant SAS timely registered its copyright for the software at issue, and alleged that the defendant had infringed a variety of elements in the work. At that point, it was the alleged infringer's burden to establish that *each* of those elements was not protectable. The district court failed to assign that burden properly. It granted judgment to the defendant even though the defendant came forward only with evidence of unprotectability as to the *some* of the elements at issue. In effect, the court put the burden of establishing protectability on the registered copyright holder, instead of on

the defendant where it belonged. Moreover, if the trial court wished to assess the evidence on protectability, it needed to take all inferences in favor of the party against whom it was granting judgment. It failed to do that here.

These errors compromised the protection that copyright affords software and the incentives to register that Congress intended. Accordingly, the Copyright Alliance respectfully asks this Court to vacate the decision below.

## ARGUMENT

### I.    Congress Sought To Incentivize The Creation And Registration Of Expressive Works.

Federal copyright law "is based on the 'economic philosophy . . . that encouragement of individual effort by personal gain is the best way to advance public welfare.'" *TCA Television Corp. v. McCollum*, 839 F.3d 168, 177 (2d Cir. 2016) (citation omitted) (ellipsis in original). The Constitution grants Congress the "Power . . . to Promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." U.S. Const. art. I, § 8, cl. 8. This constitutional provision, and the statutory scheme that implements it, is designed "to expand public knowledge and understanding . . . by giving potential creators exclusive control over copying of their

works, thus giving them a financial incentive to create informative, intellectually enriching works for public consumption." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 212 (2d Cir. 2015).

To achieve its goals, copyright law ensures that those who labor to create expressive works receive fair compensation for their efforts, without which the creators could not continue to innovate. *See Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 546 (1985). "Authors would not be able to continue to create . . . unless they earned income on their finished works. The public benefits not only from an author's original work but also from his or her further creations." *Eldred v. Ashcroft*, 537 U.S. 186, 207 n.15 (2003) (quotation marks omitted). Scholars, as well as courts, have likewise recognized that copyright protection motivates creation. *E.g.*, William M. Landes & Richard A. Posner, *The Economic Structure of Intellectual Property Law* 38–39 (2003) (discussing economic incentives for creators); 3 *Patry on Copyright* § 8:3 ("Many authors could not devote themselves to creative work without the prospect of remuneration." (quotation marks omitted)). In doing so, copyright serves public needs. "By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Eldred*,

5

537 U.S. at 219 (quotation marks omitted). "[C]opyright thus rewards the individual author in order to benefit the public." *Harper & Row*, 471 U.S. at 546 (quotation marks omitted).

Congress has encouraged creation of new works not just by providing for copyright itself, but also through the copyright registration system. Registration is permissive, not mandatory, under the Copyright Act. 17 U.S.C. §§ 102, 408. However, to incentivize rightsholders to register their copyrighted works, Congress has provided rightsholders who register with a suite of benefits. Crucially, registration allows rightsholders to sue for copyright infringement in federal court. *Id.* § 411(a). If a creator has registered her copyright within five years of first publication, the certificate of registration must then be credited by the court as *prima facie* proof of the copyright's validity. *Id.* § 410(c). Early registration also allows the creator to receive statutory damages and attorney's fees in any infringement action. *Id.* § 412.

However, these incentives are of limited value if rightsholders cannot vindicate their property rights in court. *See Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 704 (9th Cir. 1995) ("Federal copyright laws . . . . are designed to protect the property rights of copyright owners." (quotation

marks omitted)). Imposing improper burdens of proof on copyright plaintiffs makes it more difficult and expensive to prosecute an infringement case. Without the means or the werewithal to sustain infringement actions, smaller creators may well lose the economic incentive to create new works. And the value of copyright registration likewise drops if improper standards in infringement cases mean that creators cannot reap the benefits registration provides.[2]

---

[2] Moreover, the public as a whole suffers when creators lack the incentive to register. One purpose of the registration regime is to encourage depositing copies of works for the collection of the Library of Congress. *See* Bruce Keller & Jeffrey Cunar, *Copyright Law: A Practitioner's Guide* § 5:3 (Keith Voelker, 2d ed. 2017) (citing legislative history). These deposits not only enable the Library to serve as the nation's leading archive of published works, but also provide valuable evidence in litigation. *See, e.g., Tavory v. NTP, Inc.*, 495 F. Supp. 2d 531, 536 (E.D. Va. 2007), *aff'd*, 297 F. App'x 976 (Fed. Cir. 2008) (finding that the requirement of depositing a copy of a work when seeking registration serves a "gatekeeping" and "evidentiary" function, and that the "copies that are submitted . . . with an application for registration then become part of a record by which claims of infringement are tested"). Fewer registrations means fewer works in the Library's collection, and a less comprehensive database of copyrighted works and authors from the U.S. Copyright Office. Potential licensees will have difficulty finding rightsholders when they wish to license a work. Historians and researchers will have trouble uncovering facts about historic or important works. And courts will lack the easy proof that registered and deposited works provide in infringement actions. The court should prevent such erosion of the statutory regime Congress created.

II.    **It Is Well-Established That Software Consists Of Protectable Expressive Elements.**

Software falls comfortably within the set of expressive works copyright law is designed to protect. Creating new software involves precisely the sort of "creative spark" needed to qualify for copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991). In the 1980 amendments to the Copyright Act, Congress declared that software, defined as "a set of statements or instructions to be used directly or indirectly in a computer in order to bring about a certain result," is copyrightable. Act of Dec. 12, 1980, Pub. L. No. 96-517, § 10, 94 Stat. 3015, 3028 (codified at 17 U.S.C. §101).

In the intervening 40 years, courts have consistently recognized that elements of software are expressive and protectable. One prominent example are video games, which the Supreme Court held "communicate ideas—and even social messages—through many familiar literary devices (such as characters, dialogue, plot, and music)." *Brown v. Ent. Merchants Ass'n*, 564 U.S. 786, 790 (2011).

And while video games may be among the most obvious examples, other forms of software share the original spark that characterizes copyrightable material. Most obviously, the code underlying the software

8

can be copyrighted. *See, e.g., Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 44 (2d Cir. 2019) ("Source code, the human-readable literal elements of software, is copyrightable."). But as software has become more complex, courts have also held that more abstract aspects of software—such as its structure, organization, or sequencing—can exhibit creative expression worthy of copyright protection. For instance, in a leading decision, *Computer Associates International, Inc. v. Altai, Inc.*, 982 F.2d 693, 707 (2d Cir. 1992), the Second Circuit held that the "structural components" of software at higher "level[s] of abstraction" from the code itself are entitled to copyright protection if they reflect expressive elements.

Thus, as the Fifth Circuit has noted, "[m]ost courts confronted with the issue have determined that copyright protection extends not only to the literal elements of a program, *i.e.*, its source code and object code, but also to its 'nonliteral' elements, such as the program architecture, 'structure, sequence and organization,' operational modules, and computer-user interface." *Eng'g Dynamics, Inc. v. Structural Software, Inc.*, 26 F.3d 1335, 1341 (5th Cir. 1994) (citation omitted), *opinion supplemented on denial of reh'g*, 46 F.3d 408 (5th Cir. 1995); *accord Dynamic Concepts, Inc. v. Tri-State Surgical Supply & Equip. Ltd.*, 716 F. App'x 5, 8 n.2 (2d Cir. 2017); *Oracle*

9

*Am., Inc. v. Google Inc.*, 750 F.3d 1339, 1355 (Fed. Cir. 2014).[3] And the Fifth

Circuit—whose law controls here—itself has concluded that at least "some

nonliteral aspect of computer programs are within the scope of copyright."

*GlobeRanger Corp. v. Software AG*, 691 F.3d 702, 707 (5th Cir. 2012); *see Gen.*

*Universal Sys., Inc. v. Lee*, 379 F.3d 131, 142 (5th Cir. 2004).

Hence, as the Copyright Act itself provides, and as courts have

routinely recognized, any nonliteral aspects of software that are expressed

in original work fall within the scope of copyright protection.

III.  **The Court Below Improperly Shifted The Burden Of Establishing Protectability To The Registered Copyright Holder.**

The procedures employed by the district court do not sufficiently

protect registered copyright holders. In this case, once Appellant SAS came

forward with a registered copyright for its software and showed copying,

SAS was not required to establish that the elements of that software were

protectable. Instead, the burden should have shifted to the defendant

---

[3] The Supreme Court's recent decision in the same case did not affect this analysis. Google had asked the Court to decide, *inter alia*, "[w]hether copyright protection extends to a software interface." Petition for Certiorari at i, *Google LLC v. Oracle Am., Inc.*, 141 S. Ct. 1183 (2021) (No. 18-956), 2019 WL 338902. However, the Court did not address this question, expressly assuming that software interfaces are copyrightable and instead deciding the case on fair use grounds. *See Google*, 141 S. Ct. at 1197.

infringer to establish that all elements at issue were *unprotectable*. The trial court wrongly granted judgment to the defendant as a matter of law, even though by the court's own assessment the defendant had not come forward with evidence of unprotectability as to all the software elements at issue. That approach undermines the protections of copyright law and the incentives to register copyrights that Congress created.

A.    **The Proper Burden-Shifting Framework Places the Burden of Establishing Non-Protected Elements of a Copyrighted Work on the Defendant.**

As explained above, a copyrighted work that is timely registered is entitled to a presumption of validity in an infringement action. Courts recognize that this presumption requires that the burden be placed on the defendant to *disprove* protectability as to all of the elements it copied —not on the registered copyright holder to prove protectability.

Specifically, courts—including, nominally, the court below—have employed the following burden-shifting framework:

> Once [(1)] the plaintiff has proven that he has a valid copyright and that the defendant engaged in factual copying, [(2)] the defendant may seek to prove that some or all of the copied material is unprotectable. If the defendant carries this burden as to any portion of the copied material, that material should be filtered out of the analysis before comparing the two works .... [(3)] [T]he burden shifts back to the plaintiff to

> prove substantial similarity between any remaining
> . . . protectable material and the allegedly infringing
> work.

*Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1306 (11th Cir. 2020).[4]

***First***, to carry its burden, the copyright holder need only identify a valid copyright and assert factual copying (i.e. that the defendant actually copied the plaintiff's work and did not independently create the same work). *See, e.g., Eng'g Dynamics*, 26 F.3d at 1340. Courts have consistently recognized that copyright registrants have a presumption of validity, *General Universal Systems, Inc.*, 379 F.3d at 141 ("A certificate of registration . . . is prima facie evidence both that a copyright is valid and that the registrant owns the copyright."), ultimately deferring to the Copyright Office's findings in preserving the copyright registration system's integrity.

---

[4] In software cases, courts often use an "abstraction-filtration-comparison" ("AFC") test in evaluating the similarities between computer programs. *See Compulife Software Inc.*, 959 F.3d at 1303. This test entails dissecting a plaintiff's program into varying levels of generality. *Id.* Then, at each level of abstraction, those elements of the program which are unprotectable are filtered out and the remaining protectable elements are then compared with the defendant's program. *Id.* However, the AFC test does not disturb the allocation of burdens described above as the defendant must still make the initial showing that the materials it copied are unprotectable. *Id.*

*See Fonar Corp. v. Domenick*, 105 F.3d 99, 106 (2d Cir. 1997); *Marya v. Warner/Chappell Music*, Inc., 131 F. Supp. 3d 975, 985 (C.D. Cal. 2015).

*Second*, once the rightsholder plaintiff makes that required showing, the burden shifts to the alleged infringer to "prove that some or all of the copied material is unprotectable." *Compulife Software Inc.*, 959 F.3d at 1306. "Defendants bear a heavy burden" "in seeking to rebut the presumption of originality created by the certificate of registration and argue that source code of a software program is not original or copyrightable." *Engenium Sols., Inc. v. Symphonic Techs., Inc.*, 924 F. Supp. 2d 757, 779 (S.D. Tex. 2013).

To meet that burden, the defendant must "identify the species of unprotectability that he is alleging and . . . present supporting evidence." *Compulife Software Inc.*, 959 F.3d at 1306. Thus, if the defendant contended that a particular element of the copyrighted work was in the public domain, it would need to identify that element and present evidence in support of its contention (e.g., evidence showing where in the public domain the element

13

is found). *Id.*[5] To the extent that the defendant fails to make that showing for any elements of the work that are in dispute, the plaintiff prevails on this step, and "the court should simply assume that the element is protectable" and thus subject it to a substantial similarity analysis to determine infringement. *Id*

*Third*, if the defendant shoulders that heavy burden as to any element in dispute, the plaintiff must prove substantial similarity as to the remaining protectable elements. *Id.* ("[T]he burden shifts back to the plaintiff to prove substantial similarity between any remaining (*i.e.*, unfiltered) protectable material and the allegedly infringing work.").

In *Compulife*, the court emphasized the weight of the defendant's burden to prove an element's unprotectability in this burden-shifting framework. Even where a plaintiff fails "to present evidence of protectability" beyond the certificate of registration, the failure "isn't a

---

[5] The plaintiff then may rebut any evidence the defendant marshals. But, the burden-shifting framework does not require the plaintiff to rebut the defendant's specific evidence or arguments—and it certainly does not require the plaintiff to address the protectability of elements not raised by the defendant. At this stage, that burden resides with the defendant. *Compulife Software Inc.*, 959 F.3d at 1306.

14

sufficient reason to give judgment to the defendant" because ultimately "the defendant bears the burden to demonstrate unprotectability." *Id.*

This heavy burden is well-justified. For one thing, if the burden fell on the plaintiff, it would effectively vitiate the presumption of validity afforded for registration. The plaintiff would face the insurmountable task of proving a negative—that all of his work is *not* in the public domain or *not* an idea. Thus, the defendant bears the burden of narrowing the task; the defendant identifies particular portions of allegedly unprotectable material with supporting evidence and creates a "manageable task of responding" for the plaintiff. *Id.* (quotation marks and alteration omitted).

Moreover, as explained above, *supra* at 6-7, the level of protectability aligns with the copyright system's emphasis on copyright registration. "Although registration is voluntary under the Copyright Act, Congress created several incentives for a copyright owner to register his copyright." *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 856 F.3d 1338, 1340 (11th Cir. 2017), *aff'd*, 139 S. Ct. 881 (2019). One of the key incentives is the presumption of validity for a registered copyright holder. That a defendant infringer bears the burden of *disproving* protectability in the burden-shifting framework fits into this broader framework of incentives.

Finally, in an infringement case, questions of protectability of the elements of the copyrighted work are traditionally defenses that are properly placed on the defendant. As in most areas of law, the "defendant bears the burden as to defenses." 3 *Nimmer on Copyright* § 12.11. Courts have classified many questions of protectability as defenses. *See Ets-Hokin v. Skyy Spirits, Inc.*, 323 F.3d 763, 764-65 (9th Cir. 2003) (merger and *scenes à faire* described as "defensive doctrines" upon which defendant, not plaintiff, bears the burden of proof); *Innovation Ventures, LLC v. Ultimate One Distrib. Corp.*, 176 F. Supp. 3d 137, 156 (E.D.N.Y. 2016) ("Because merger is a means to invalidate a registered copyright, defendant bears the burden to establish merger.").

Thus, under the proper burden-shifting framework, the defendant—here, World Programming—bears the heavy burden of proving which elements of the protected software were unprotectable.

## B.    The District Court Engaged in Improper Burden-Shifting.

The district court did not follow the burden-shifting approach outlined above. While it professed to follow the above framework, *see SAS Inst. Inc. v. World Programming Ltd.*, 496 F. Supp. 3d 1019, 1027-28 (E.D. Tex. 2020), *appeal docketed*, No. 21-1542 (Fed. Cir. Jan. 13, 2021), in practice, it shifted

much of World Programming's burden back onto SAS. Here, instead of demanding that World Programming identify and explain why each copied element was unprotectable, the district court effectively placed the burden on SAS to prove that each copied element of its copyrighted program was protectable.

Tellingly, the court stated that "[o]nce a defendant establishes that *at least some* of the material is not entitled to protection, the burden shifts back to the plaintiff to . . . combat the allegations." *Id.* at 1028 (emphasis added). In other words, because World Programming supposedly showed that *some portions or aspects* of the copyrighted work were not protectable, SAS had the burden to prove not only that those portions or aspects were, in fact, protectable, but *also* that the portions or aspects that World Programming did not challenge as unprotectable likewise were protectable. *See id.* (requiring SAS to "com[e] back and show[] that there are remaining and identifiable protectable elements that defendant copied"). Such a regime "would unfairly require [SAS] to prove a negative" by "preemptively present[ing] evidence negating all possible theories of unprotectability" as to the remaining elements "just to survive a motion for summary judgment."

17

*Compulife*, 959 F.3d at 1305. Thus, the district court here misapplied the burden-shifting framework.

These errors were compounded by the fact that the district court purported to grant judgment to the defendant as a matter of law even though there were facts in dispute. Protectability is a mixed question of fact and law. *See, e.g., Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1370 (10th Cir. 1997) ("[A]s a mixed question of law and fact, we must evaluate whether the elements copied by the defendant are protected by copyright."). Determining whether, for instance, a copyrighted work has elements that qualify as ideas (as opposed to expression), or are *scenes á faire*, entails answering both legal and factual questions.[6]

As with all factual disputes in a case to be tried to a jury, a court may resolve them only if it finds there is no genuine dispute even after taking all inferences in favor of the party against whom judgment is sought. If the facts are not clear as a matter of law, they are exclusively in the jury's province

---

[6] Originality, for example, commonly has factual predicates. *See* 3 *Nimmer on Copyright* § 12.10[B] (stating that "threshold factual determinations" regarding originality "of course, are for the jury"). Likewise, the *scenes á faire* doctrine requires determining "whether or to what extent industry demand and practice . . . dictated the" elements for which the plaintiff seeks copyright protection. *Eng'g Dynamics*, 26 F.3d at 1347.

to resolve. *See, e.g., MGE UPS Sys., Inc. v. Power Maint. Int'l Inc.*, No. 4:04-CV-929-Y, 2007 WL 9711471, at *2 (N.D. Tex. Mar. 26, 2007) ("MGE has nevertheless created a fact issue on the questions of whether its software is merely a procedure, process, or method of operation and whether the doctrines of merger and *scenes á faire* apply, which GE/PMI contend render the software ineligible for copyright protection.").[7]

Here, the district court appeared to ignore these requirements in granting judgment to the defendant. The district court stated that "resolving copyrightability within the limited framework of Federal Rule of Civil Procedure 56 would be improper." *SAS Inst.*, 496 F. Supp. 3d at 102. Thus, instead of resolving the parties' dueling summary judgment motions, the court issued a decision in which it ruled on the very factual predicates

---

[7] *See also eScholar, LLC v. Otis Educ. Sys., Inc.*, No. 04 Civ. 4051, 2005 WL 2977569, at *26 (S.D.N.Y. Nov. 3, 2005) (determining in filtration analysis that "there are issues of contested fact regarding the extrinsic considerations that guide or govern programmers in the K-12 industry"); *cf. R.C. Olmstead, Inc., v. CU Interface, LLC*, 606 F.3d 262, 275 (6th Cir. 2010) (determining that there would have been a genuine dispute of material fact had plaintiff identified evidence regarding protectability of elements at abstraction and filtration stages); *M-I L.L.C. v. Q'Max Sols., Inc.*, No. CV H-18-1099, 2020 WL 4549210, at *6 (S.D. Tex. Aug. 6, 2020) (same); *Macro Niche Software, Inc. v. 4 Imaging Sols., L.L.C.*, No. CV H-12-2293, 2013 WL 12140417, at *5 (S.D. Tex. Dec. 18, 2013) (same).

that normally would go to a jury. That decision further undermined the protections accorded to a registered copyright holder.

## CONCLUSION

*Amicus* respectfully requests that the Court vacate the district court's decision and remand for further proceedings.

Respectfully submitted,

Dated: May 21, 2021

/s/ *Matthew S. Hellman*

Matthew S. Hellman
Noah B. Bokat-Lindell
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000

Gianni P. Servodidio
Ethan C. Wong
JENNER & BLOCK LLP
919 Third Ave.
New York, NY 10022
Telephone: (212) 891-1600

*Counsel for Amicus Curiae*

20

# CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2021, I caused the foregoing brief to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system, which caused a copy of the foregoing to be delivered by electronic means to counsel of record.

/s/ *Matthew S. Hellman*
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
mhellman@jenner.com

*Counsel for Amicus Curiae*
*Copyright Alliance*

## CERTIFICATE OF COMPLIANCE

I hereby certify that:

1.      This Brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this Brief contains 4,172 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(f) and Federal Circuit Rule 32(b).

2.      This Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionately spaced typeface using Microsoft Office Word 2016 in Century Expanded LT Std, Font Size 14.

*/s/ Matthew S. Hellman*
Matthew S. Hellman
JENNER & BLOCK LLP
1099 New York Ave., NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000

*Counsel for Amicus Curiae*
*Copyright Alliance*

May 21, 2021
